**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|                          |     |                         |
|--------------------------|-----|-------------------------|
| **TIBEBE SAMUEL,**       | *   |                         |
| **Plaintiff,**           | *   |                         |
|                          | *   |                         |
| **v.**                   | *   | **Case No.: PWG-17-1372** |
|                          | *   |                         |
| **LARRY HOGAN,** *et al.*, | *   |                         |
| **Defendants.**          | *   |                         |
|                          | *   |                         |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Plaintiff Tibebe Samuel (who is proceeding without counsel) brings claims against a series of Maryland State Officials sued only in their official capacities for violations of the Equal Protection and Due Process Clauses of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983. Compl. 2, ECF No. 1. His claims stem from the suspension of his driver's license for failure to pay child support, and Mr. Samuel's belief that he was denied due process and discriminated against because he is a Black man. He seeks $350,000.00 and various forms of retrospective and prospective injunctive relief. *Id.* at 6–7. Defendants have filed a motion to dismiss all of Plaintiff's claims. ECF No. 10.[1] Because neither the State of Maryland nor its officials sued in their official capacity are "persons" for purposes of § 1983, Mr. Samuel cannot bring a suit for monetary damages against the State of Maryland or Governor Hogan and Secretaries Padilla and

---

[1] The parties fully briefed the motion. ECF Nos. 10-1, 12, 13. A hearing is not necessary. *See* Loc. R. 105.6. Mr. Samuel has requested leave to file a surreply, ECF No. 15; however, his request is denied because they are not permitted as a matter of course by the Local Rules of this Court, and there is nothing extraordinary about this case that militates in favor of allowing a surreply in order to adequately frame the issues for the Court. *See* Loc. R. 105.2.

Rahn ("State Defendants")[2] for retrospective relief. Therefore, these claims will be dismissed. Additionally, Mr. Samuel has pleaded claims that are time-barred and has failed to state a plausible Due Process or Equal Protection Clause claim. Because I have determined that amending his Complaint would be futile, I will dismiss his Complaint with prejudice.

## Background[3]

Mr. Samuel and his then-wife filed for and received a divorce in the Circuit Court for Prince George's County, Maryland. State Ct. Dockets CAD05-13475, CAD06-08853.[4] At the time the final order was entered, Mr. Samuel was represented by Dennis Gottesmann. State Ct. Docket CAD06-08853. Mr. Samuel alleges that, during the proceedings, his ex-wife and her attorney, Patricia McCarthy (neither of whom is a party to this litigation), "submitted a fraudulent pay stub to inflate [his] income," and that his "former wife committed perjury under [oath] claiming that she made $30,000/year before her marriage to [him]." Compl. § III.H. On April 2, 2007, Mr. Samuel's ex-wife was granted custody of their minor children and he was ordered to pay $1,211.00 per month in child support, plus $302.00 per month until he paid an arrearage of $6,055.00. State Ct. Docket CAD06-08853, Entry 61. The state court order also granted Gottesmann's request to withdraw as Mr. Samuel's counsel because "[n]either plaintiff

---

[2] As discussed later in this opinion, Director Johnson is a County, not a State official, and does qualify as a "person" under § 1983. However, as will be seen, the claims against her must be dismissed for other reasons.

[3] For the purposes of considering Defendants' motion, I accept the well pleaded facts (but not legal conclusions) that Plaintiff has alleged in his Complaint as true. *See Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011). "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c).

[4] I take judicial notice of the state court docket on the Maryland Judiciary Case Search website, http://casesearch.courts.state.md.us/casesearch/inquiryByCaseNum.jis. *See* Fed. R. Evid. 201(b)(2). I also take judicial notice of the orders issued in conjunction with those proceedings that Defendants have attached to their motion. *See id.*; *Sposato v. First Mariner Bank*, No. CCB-12-1569, 2013 WL 1308582, at *2 (D. Md. Mar. 28, 2013); Fed. R. Civ. P. 10(c).

[Mr. Samuel's ex-wife] nor any counsel has had any form of contact with the defendant since December 20, 2006, and his whereabouts are unknown." Divorce Order & Modifications, ECF No. 10-2. Mr. Samuel alleges that he was ordered to pay in child support "an amount he can't possibly pay." Compl. III.H. However, in October, 2016, he filed a motion to modify his child support payments (his third), which was granted in March 2017. *Id.* § III.G. His new monthly payment was $346.00. Divorce Order & Modifications 9.

Plaintiff alleges that the effective date of his child support payment modification was March 1, 2017, and that he made a payment on March 9, 2017. Compl. III.G. However, the record shows that his payments were not modified until March 16, 2017.[5] Divorce Order & Modifications 9–10. He alleges that because of the "fraud and perjury committed during [his] divorce proceedings," he owes $117,000.00 in unpaid child support. Compl. § III.E. As a result, the State of Maryland has attempted to collect the arrearage. *Id.*

On July 18, 2016, Mr. Samuel attempted to renew his driver's license at the Motor Vehicle Administration ("MVA"); however, his license had been suspended for failure to pay child support. *Id.* § III.B. Mr. Samuel filed a motion to reinstate his driver's license in the Circuit Court for Prince George's County, which was granted on November 22, 2016. *Id.* § III.C; *see also* CAD06-08853, Entry No. 315. Mr. Samuel alleges that, armed with the state court order reinstating his license, he attempted to retrieve it from the MVA on December 5, 2016, but was turned down. *Id.* However, he admits that he did receive his driver's license on January 17, 2017. Compl. III.C.

---

[5] Plaintiff's Complaint and Opposition do not contain any additional facts regarding how many payments, if any, Samuel has made toward the child support he was ordered to pay; only that the state allegedly is collecting the arrearage. *See* Compl. § III.E. The Circuit Court for Prince George's County did modify his payments on March 15, 2011, July 11, 2013, and March 16, 2017. *See* Divorce Order & Modifications 4–10.

On May 8, 2017, Mr. Samuel received a letter from the Maryland MVA "informing [him] that his license would be suspended effective May 30, 2017, at the request of the Maryland Office of Child Support Enforcement Administration." *Id.* § III.A. The letter, which Mr. Samuel attached to his Opposition, advised that he could request a hearing in the case of mistaken identity, contact Prince George's County to avoid suspension of his license, or contest the accuracy of the information relied on by the Support Enforcement Administration. Suspension Ltr., ECF No. 12-1.[6] Eschewing the process afforded to him to challenge the suspension, on May 17, 2017, Mr. Samuel filed this lawsuit against Governor Larry Hogan, Secretary Lourdes Padilla of Maryland's Department of Human Resources, Secretary Pete Rahn of Maryland's Department of Transportation, and Director Jarnice Johnson of Prince George's County Office of Child Support Enforcement. Compl.

Mr. Samuel alleges that in seeking the money owed by him for child support and by suspending his license on two occasions, the State of Maryland and Prince George's County— through the named Defendants in their official capacities—have violated the Due Process and Equal Protection Clauses of the Fourteenth Amendment. Specifically, he states that his license was suspended without due process, that he was prejudiced in his divorce proceedings, and that Defendants "never corrected the egregious error made." *Id.* § III.H. In conjunction with his Equal Protection Clause claim, he alleges (without any factual particularity) that the procedures employed in Maryland to award and enforce child support favor custodial parents, and makes the conclusory allegation that ninety percent of noncustodial parents are men "and the majority are

---

[6] The Suspension Letter is integral to Plaintiff's claims and Defendants have not disputed its authenticity. *See Sposato*, 2013 WL 1308582, at *2 (D. Md. Mar. 28, 2013); *see also CACI Int'l v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

black men." *Id.* § III.I. Mr. Samuel seeks $350,000.00 in compensatory damages, punitive damages, and injunctive relief in the following forms: (1) that Defendants "change the law in the State of Maryland to assist non-custodial parents"; (2) that the Court issue an injunction preventing the suspension of his license; (3) that the Court "waive" his child support arrearages that allegedly were procured by fraud and perjury; and (4) that the State refrain from reporting his missed child support payments to the credit reporting agencies. *Id.* at 6–7.

Defendants have moved to dismiss Mr. Samuel's Complaint in its entirety, arguing that, based on the *Rooker-Feldman* doctrine, this Court lacks subject matter jurisdiction;[7] that this lawsuit is barred because of Eleventh Amendment immunity; that Mr. Samuel fails to state a claim for which relief can be granted; that his Complaint is time barred; and that Defendants Governor Hogan and Secretary Rahn have no official responsibilities for "determination[s] with respect to child support enforcement." Defs.' Mem. 1-2.

## Standard of Review

Defendants move to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), which provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted." *Velencia v.*

---

[7] Defendants broadly assert that this Court lacks subject matter jurisdiction to hear the Plaintiff's claims under the *Rooker Feldman* doctrine. Defs.' Mem. 5–6. While it is true that past decisions of both the Fourth Circuit and this Court have used that doctrine rather broadly to find a lack of jurisdiction to decide claims that were or could have been brought in prior state court proceedings, the Fourth Circuit has noted much more recently that the Supreme Court has clarified that the *Rooker Feldman* doctrine is very narrow, and only applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Thana v. Bd. of License Comm'rs for Charles Cty.*, 827 F. 3d 314, 320 (4th Cir. 2016) (internal quotations omitted). While the *Rooker Feldman* doctrine might be grounds for deciding that this Court lacks jurisdiction to modify the state court orders imposing child support obligations on Plaintiff (a decision I do not need to make because Samuel's suit must be dismissed for other reasons), it clearly does not divest this court of jurisdiction to hear his claims that the procedures used to suspend his driving privileges for failure to pay child support violate the due process and equal protection clauses. *See id.* at 320–21.

*Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012). This rule's purpose "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)). To that end, the Court bears in mind the requirements of Fed. R. Civ. P. 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), when considering a motion to dismiss pursuant to Rule 12(b)(6). Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79; *see Velencia*, 2012 WL 6562764, at *4 (discussing standard from *Iqbal* and *Twombly*). Similarly, "unsupported legal allegations need not be accepted." *Nam v. 2012 Inc.*, No. DKC-15-1931, 2016 WL 107198, at *3 (D. Md. Jan. 11, 2016) (citing *Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989)). Although the filings of self-represented parties are afforded a more generous construction by the Court than those submitted by counsel, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), that deference does not absolve them from complying with the essential requirements of pleading plausible claims, *see Holsey v. Collins*, 90 F.R.D. 122, 128 (D. Md. 1981) (citing *Inmates v. Owens*, 561 F.2d 560, 562–63 (4th Cir. 1977)).

Although at this stage of the proceedings, I must accept the well pleaded facts alleged in Mr. Samuel's Complaint as true, *see Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011), when reviewing a motion to dismiss, I "may consider documents attached to the complaint as well as documents attached to the motion to dismiss, if they are integral to the complaint and their authenticity is not disputed." *Sposato*, 2013 WL 1308582, at *2 (D. Md. Mar. 28, 2013); *see*

*also CACI Int'l v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). Moreover, where the allegations in the complaint conflict with an attached written instrument, "the exhibit prevails." *Fayetteville Inv'rs v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991); *see Azimirad v. HSBC Mortg. Corp.*, No. DKC-10-2853, 2011 WL 1375970, at *2–3 (D. Md. Apr. 12, 2011).

## <u>Discussion</u>

### *"Person" for § 1983 Purposes, Eleventh Amendment Immunity*

To state a claim under § 1983, a plaintiff must name a defendant who qualifies as a "person" for purposes of § 1983.[8] *See Bixler v. Harris*, No. WDQ-12-1650, 2013 WL 2422892, at *5 (D. Md. June 3, 2013) ("Section 1983 provides a remedy against any *person* who, acting under color of law, deprives another of constitutional rights." (emphasis added) (citing 42 U.S.C. § 1983)). A state is not "a 'person' within the meaning of 42 U.S.C. § 1983." *Kelly v. Bishop*, No. RDB-16-3668, 2017 WL 2506169, at *4 (D. Md. June 9, 2017) (citing *Will v. Michigan*

---

[8] Defendants argue that Plaintiff's § 1983 allegations fail to state a claim because the State and its officials sued in their official capacity are not "persons" for purpose of § 1983. Additionally, they assert that Plaintiff's claims are barred by Eleventh Amendment Immunity. Defs.' Mem. 7–8. It is not unusual for both defenses to be raised in a single suit, but when they are, this creates a "chicken-or-the-egg" situation for the court—which defense should be addressed first. Because a determination that a defendant is not a "person" for § 1983 purposes ends the inquiry, the Supreme Court has instructed that compliance with the "person" requirement of § 1983 must be analyzed first. *See, e.g., Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 778–80 (2000) (holding in a *qui tam* suit against a state agency (which, like § 1983, requires that the defendant be a "person") that "[t]he ultimate issue in the statutory inquiry is whether states can be sued under this statute; and the ultimate issue in the Eleventh Amendment inquiry is whether unconsenting states can be sued under this statute," and "[t]his combination of logical priority and virtual coincidence of scope makes it possible and indeed appropriate, to decide the statutory issue first"); *see also Power v. Summers*, 226 F.3d 815, 818 (7th Cir. 2000) (Applying *Vermont Agency* to a § 1983 suit and addressing the statutory "person" requirement before Eleventh Amendment Immunity). Accordingly, I will begin my analysis with the statutory requirements of a § 1983 claim.

7

*Dep't of State Police*, 491 U.S. 58, 64–65 & 70–71 (1989)). And, a § 1983 action for monetary damages and retrospective relief against state officers in their official capacity is viewed as a lawsuit against the State itself. *See Will*, 491 U.S. at 64–65, 70–71, n.10 ("Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself."). Therefore, a State official sued in his official capacity is not subject to a § 1983 action for monetary damages and retrospective relief. *See id.*

Pursuant to § 1983, Mr. Samuel seeks $350,000.00 and relief for the suspension of his driver's license in July 2016 (notwithstanding the fact that, after corresponding with numerous state officials, the status of his license was resolved on January 17, 2017 when he presented a court order reinstating his license to the MVA, and his license was returned to him).[9] Compl. §§ I.4, III.B–C. Governor Hogan is the Chief Executive Officer of Maryland, and Secretaries Padilla and Rahn are the heads of Maryland State Agencies. Md. Code Ann., Hum. Servs. §§ 2-202, 3-101; Md. Code Ann., Transp. § 2-102; Md. Code Ann., State Gov't § 3-302. To the extent that the Plaintiff claims that they were deficient in the performance of their official duties, he is attempting to sue them in their official capacity for monetary damages and retrospective relief, and all such claims must be dismissed because they are not "persons" for purposes of § 1983. *See Will*, 490 U.S. at 64-65, 70–71; *Kelly*, 2017 WL 2506169, at *4. This includes his claim against these Defendants for the alleged violation of his Equal Protection and Due Process

---

[9] In his Opposition, Mr. Samuel for the first time alleges claims against the State pursuant to 42 U.S.C. §§ 1985, 1986. I will not consider these allegations, because an opposition to a dispositive motion is not a vehicle for amending a pleading. *See Whitten v. Apria Healthcare Grp., Inc.*, No. PWG-14-3193, 2015 WL 2227928, at *7 (D. Md. May 11, 2015). Further, even if it were a vehicle for amending a pleading, merely quoting the statute is insufficient to state a claim for relief, and his filing otherwise fails to state a plausible claim under these statutes. *See Foster v. Howard Cmty. Coll.*, RDB-13-1395, 2014 WL 758027, at *4 (D. Md. Feb. 24, 2014).

Rights regarding the suspension of his license from July 2016 until January 2017, because his request for injunctive relief is moot (his driver's license having been restored to him), leaving only a claim for monetary damages which cannot be brought against these Defendants.

Additionally, Defendants assert that they are immune from liability under the Eleventh Amendment, because the state has not waived its sovereign immunity. Defs.' Mem. 7-8. As Judge Bennett of this Court has aptly and succinctly stated, "the state of Maryland is immune from liability under the Eleventh Amendment from suit in federal court" for monetary and retrospective injunctive relief. *Kelly*, 2017 WL 2506169 at * 4. Therefore, both the statutory defense and Eleventh Amendment Immunity require that Samuel's claims for monetary relief and retrospective relief against the State Defendants be dismissed.

However, Mr. Samuel also seeks prospective injunctive relief, and "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Will*, 491 U.S. at 71 n.10 (quoting *Kentucky v. Graham,* 473 U.S. 159, 167 n. 14 (1985)); *see also Edelman v. Jordan*, 415 U.S. 651, 676–77 (1974) (holding that Eleventh Amendment Immunity bars retrospective monetary relief only and permits prospective injunctive relief) (citing *Ex parte Young*, 209 U.S. 123 (1908)). Therefore, Secretaries Padilla and Rahn, as well as Governor Hogan potentially are subject to a § 1983 action for prospective injunctive relief, *see Will*, 490 U.S. at 71 n.10, if Samuel has managed to allege a plausible violation of his federally protected rights entitling him to prospective relief only. But, as discussed below, he has not plausibly alleged such a claim.

As for Director Johnson, a suit against a county official in her official capacity "serve[s] as [a] suit[] against the County," not the State. *Huggins v. Prince George's Cty., Md.*, 683 F.3d

525, 532 (4th Cir. 2012). For that reason, Prince George's County is a local unit of government potentially susceptible to suit if a plausible claim for violation of federally protected rights has been alleged, and, accordingly, qualifies as a "person" for purposes of § 1983, *see Peterson v. Prince George's Cty.*, No. PWG-16-1947, 2017 WL 2666109, at *2 (D. Md. June 21, 2017) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690–91 (1978); *DiPino v. Davis*, 729 A.2d 354, 368 (Md. 1999)). By logical extension, a county official sued in her official capacity also is a "person" for purposes of § 1983. *See id.*; *see also Huggins*, 683 F.3d at 532. Accordingly, the fourth defendant, Johnson, is susceptible to an otherwise properly pleaded § 1983 action for damages and retrospective and injunctive relief. *See Peterson*, 2017 WL 2666109, at *2. However, for the reasons stated below, Samuel's claims against Director Johnson must be dismissed on other grounds.

## Statute of Limitations

Defendants also argue that Mr. Samuel's claims are time barred, as his claims were filed more than three years after his state court divorce proceedings, from which all his claims flow. Defs.' Mem. 13–14. Mr. Samuel argues that Defendants' claim that his complaint is untimely is "baseless," as they are continuing to violate his rights. Pl.'s Opp'n. 12. He states that

> Plaintiff's driver [sic] license was suspended in 2016 and 2017. He is harassed by the State actors even today demanding payment for more than $100,000.00 (One hundred thousand dollars). This case is not just about the Prince George [sic] Circuit court's decision, this case is about the violation of plaintiff's fundamental right [sic] which is ongoing.

*Id.* Despite alleging in conclusory terms that his rights are continually being violated, Mr. Samuel does not dispute that the State divorce proceedings that resulted in the award of custody to his former wife and order requiring him to pay child support occurred over a decade ago. *See id.*; *see also* Defs.' Reply 7.

Section 1983 does not contain a statute of limitations. Courts therefore look to state law for the appropriate limitations period. *Jersey Heights Neighborhood Assoc. v. Glendening*, 174 F.3d 180, 187 (4th Cir. 1999). Based on Maryland law, claims alleging violations of the Equal Protection and Due Process Clauses must be brought within three years of accrual. *Id.*; *Halle Dev., Inc. v. Anne Arundel Cty.*, 121 F. App'x 504, 507 (4th Cir. 2005) (citing Md. Code Ann., Cts. & Jud. Proc. § 5-101). "The time of accrual of a section 1983 action is governed by federal law, and the claim accrues when the affected party knew or should have known of the injury that is the basis of the action." *Halle Dev., Inc.*, 121 Fed. App'x at 507.

The focus of Mr. Samuel's suit is the state court divorce and custody action that resulted in his ex-wife being awarded custody of the children and him being ordered to pay child support. It is from these court orders that all his current grievances flow. On April 2, 2007, the Circuit Court for Prince George's County ordered Mr. Samuel to pay monthly child support as well as monthly payments for a $6,055.00 arrearage.[10] Mr. Samuel's Complaint requests that this Court "waive" this child support arrearage because "the child support payment arrarrage [sic] is accumlated [sic] because of fruad [sic] and perjury." Compl. 7.

Mr. Samuel's allegations stem from the fact that he believes he was the victim of fraud when the Circuit Court for Prince George's County ruled against him in 2007. Mr. Samuel knew, or reasonably should have known, of this ruling at that time and could (and should) have brought the claims he now alleges within three years of the court order, or sought relief by appealing the order within the Maryland courts.[11] However, he did not. Regardless, he now is

---

[10] State Court Docket CAD06-08853, Entry 61 ("DEFENDANT TIBEBE SAMUEL TO PAY $1211.00 PER MONTH CHILD SUPPORT. ARREARS ASSESSED AT $6055.00; DEFENDANT TO PAY $302.00 PER MONTH ON ARREARS BEGINS MAY 1, 2007 . . . .").

[11] Mr. Samuel insists it was a denial of his due process rights because he "did not participate in his divorce proceeding which allowed his former wife and her attorney to commit fraud." Pl.'s

time barred from bringing these allegations because he brought this suit far more than three years after his claims accrued as measured from the time he "knew or should have known of the injury." *See Halle Dev., Inc.*, 121 Fed. App'x at 507. Nor does Mr. Samuel provide any reason why the limitations period should be equitably tolled. In fact, Mr. Samuel's Opposition indicates that he knew of the alleged fraud in 2009 when he "attempt[ed] to get the case reopened based on fraud, [but] his attempt failed." Pl.'s Opp'n 3. Further, Mr. Samuel does not allege that the calculation of what he owes in past-due child support is mathematically incorrect, but only that it stemmed from his conclusory allegations of fraud during the 2007 state court proceedings. *See* Compl. § III.C ("The Child support arrearage in the amount of about $117,000.00 (one hundred seventeen thousand dollar [sic]) has been allegedly incurred by the plaintiff as a result of fraud and perjury committed during the plaintiff's divorce proceedings."). As such, these allegations do not raise any claims that *accrued* within the three-year limitations period. Therefore, any claims that stem from his divorce and the order directing him to pay child support—to include the arrears that he claims accumulated because of the allegations of fraud that took place during the original divorce proceedings in the Circuit Court for Prince George's County—will be dismissed as time-barred.

---

Opp'n 11. Mr. Samuel is wrong. He did participate in his divorce proceedings—right up until the time that he apparently chose to abandon them. During the course of the proceedings, which began on June 29, 2005, Mr. Samuel was represented by counsel. *See* State Court Docket CAD05-13475 (consolidated with State Court Docket CAD06-08853). However the order of the state court finalizing the divorce stated that "[n]either plaintiff nor any counsel has had any form of contact with the defendant [Samuel] since December 20, 2006, and his whereabouts are unknown," showing that even though Samuel had stopped participating, he was still involved in his case, through counsel. Divorce Order 1. Mr. Samuel, who was represented and submitted to the jurisdiction of the state court, cannot now be sympathetically heard to argue that he did not participate in the state court proceedings that he elected to abandon.

*Equal Protection and the Collection of Child Support*

The Equal Protection Clause of the Fourteenth Amendment "commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.,* 473 U.S. 432, 439(1985) (quoting *Plyler v. Doe,* 457 U.S. 202, 216, (1982)). To state a cognizable claim for denial of equal protection, a plaintiff must allege discriminatory intent as well as disparate impact. In other words, "[t]o succeed on an equal protection claim, a plaintiff must first demonstrate he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty,* 239 F.3d 648, 654 (4th Cir. 2001). From what I can discern, Mr. Samuel alleges that the frequency with which Maryland courts award custody of minors to mothers, instead of fathers, and the subsequent processes for collecting, adjusting, and administering child support payments are discriminatory against men in general, and Black men in particular. Compl. § III.I; *see also* Pl.'s Mem. 2, 5. He alleges that ninety percent of non-custodial parents are men (the majority of whom are Black), and therefore, the collection of child support and possible or eventual suspension of driver's licenses for failure to pay disproportionately affects men and Black men. However, this does not suffice to state a claim for an equal protection violation.

An initial issue is that Mr. Samuel does not identify any particular statute that he is challenging, but rather alleges in sweeping terms that the Office of Child Support Enforcement "has no legal basis to request the suspension of [his] license." Compl. § III.A. Defendants identify § 10-119 of the Maryland Code on Family Law as the provision by which they maintain authority to suspend driver's licenses for failure to pay court ordered child support. Defs.' Mem.

11.  It provides that "the [Child Support] Administration may notify the Motor Vehicle Administration of an obligor with a noncommercial license who is 60 days or more out of compliance . . . with the most recent order of the court in making child support payments," and "[u]pon notification by the Administration under this subsection, the Motor Vehicle Administration shall suspend the obligor's license or privilege to drive in the State."  Md. Code Ann., Fam. Law § 10-119(b)(1)–(2).  In examining the statute, on its face it is clearly gender and race neutral and applicable to all non-custodial parents who have been ordered to pay child support and are in arrears for the required period of time.  *See id.*  Alternatively, it may be that Mr. Samuel's arguments are intended to target the authority of the State to award child custody.  However, the statute that governs child custody awards, Fam. Law § 5-203, also is gender and race-neutral.  It provides that "[i]f the parents live apart, a court may award custody of a minor child to either parent or joint custody to both parents.  Neither parent is presumed to have any right to custody that is superior to the right of the other parent."  *Id.*

In *Personnel Administrator of Massachusetts v. Feeney*, the Supreme Court upheld a statute that provided a preference in hiring veterans, despite the fact that only 1.8 percent of veterans in Massachusetts were women.  442 U.S. 256, 270–71, 279–81 (1979) ("When the totality of legislative actions establishing and extending the Massachusetts veterans' preference are considered the law remains what it purports to be: a preference for veterans of either sex over nonveterans of either sex, not for men over women.") (internal citations omitted).  Even though Mr. Samuel asserts that over ninety percent of noncustodial parents nationwide are male, that conclusory allegation alone is insufficient to find that he has stated an equal protection claim because Mr. Samuel has not plausibly alleged that the law was enacted for a discriminatory purpose.  In other words, disproportionate impact alone is insufficient to demonstrate an equal

protection violation by a facially neutral statute such as here—the plaintiff must also demonstrate that the statute was enacted with a discriminatory intent. *Id.* (pleading gender-based discriminatory impact and discriminatory intent required for equal protection clause claim when alleged discrimination is based on a facially neutral statute); *Washington v. Davis*, 426 U.S. 229, 239–42 (1976) (same for race-based discrimination). Samuel has failed to do so. Therefore, the statutes at hand are only subject to rational basis review and not a heighted form of scrutiny.[12]

The Fourth Circuit has stated the following regarding rational basis review:

---

[12] Mr. Samuel's allegations that "more than 90% [of the parents ordered to pay child support] are men and the majority are black men" are entirely conclusory. *See* Compl. § III.I. If he is correct, under an Equal Protection clause analysis, race or gender-based discrimination would be subject to a heightened form of scrutiny. *Washington*, 426 U.S. at 239–42. However, because the statutes under which child support is awarded and driver's licenses may be revoked are race and gender neutral, *see* Md. Code Ann., Fam. Law §§ 1-201 (establishing that equity courts "may (1) direct who shall have the custody or guardianship of a child, pendente lite or permanently . . . (3) decide who shall be charged with the support of the child, pendente lite or permanently"); 10-119 (permitting the revocation and suspension of licenses for failure to pay child support); 12-204 (establishing that the court calculates the child support award based on the finances of both parents), he must plead more than that they have a discriminatory impact; he must plead that they were enacted to achieve a discriminatory purpose. *Pers. Adm'r of Mass.*, 442 U.S. at 272 (holding that a gender neutral statute was valid and stating that "as was made clear in *Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 and *Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450, even if a neutral law has a disproportionately adverse effect upon a racial minority, it is unconstitutional under the Equal Protection Clause only if that impact can be traced to a discriminatory purpose"); *Washington*, 426 U.S. at 239–42 (holding that statistical data proving disproportionate impact on one race was not sufficient and that proving discriminatory purpose was also required). If Mr. Samuel pleaded a discriminatory purpose and discriminatory impact, the statutes in question would be subject to strict scrutiny for his race claim while the statutes would be subject to intermediate scrutiny for his gender-based claim. *See Washington*, 426 U.S. at 242 ("Standing alone, [disproportionate impact] does not trigger the rule . . . that racial classifications are to be subjected to the strictest scrutiny and are justifiable only by the weightiest of considerations.") (internal citations omitted); *Adkins v. Rumsfeld*, 464 F.3d 456, 468 (4th Cir. 2006) (holding that gender-based discrimination is subject to intermediate scrutiny). However, having failed to plead sufficiently both a discriminatory purpose and discriminatory impact, neither form of heightened scrutiny applies and the statute is deemed valid if "it bears a rational relation to some legitimate end." *Vacco v. Quill*, 521 U.S. 793, 799 (1997) (citing *Romer v. Evans,* 517 U.S. 620, 631 (1996)).

> "[A] classification neither involving fundamental rights nor proceeding along
> suspect lines is accorded a strong presumption of validity. Such a classification
> cannot run afoul of the Equal Protection Clause if there is a rational relationship
> between the disparity of treatment and some legitimate governmental purpose."
> *Heller v. Doe*, 509 U.S. 312, 319–20, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993)
> (citations omitted). Under the rational basis test a court must determine
> (1) "whether the purpose that animates [the challenged] laws and regulations is
> legitimate," *Smith Setzer & Sons, Inc. v. S.C. Procurement Review Panel*, 20 F.3d
> 1311, 1320 (4th Cir.1994), and (2) whether it was "reasonable for the lawmakers
> to believe that use of the challenged classification would promote that purpose,"
> id. (quoting *W. & S. Life Ins. Co. v. State Bd. of Equalization*, 451 U.S. 648, 668,
> 101 S.Ct. 2070, 68 L.Ed.2d 514 (1981)).

*Adkins v. Rumsfeld*, 464 F.3d 456, 469 (4th Cir. 2006).

Indeed, other courts have found that laws enacted for very similar reasons and structured in similar ways do not violate of the Equal Protection Clause. *See Agg v. Flanagan*, 855 F.2d 336, 341–42 (6th Cir. 1988) (holding that an Ohio law that permitted wage assignments, garnishments, or wage attachments to collect child support did not violate the Equal Protection Clause); *United States v. Nichols*, 928 F. Supp. 302, 318 (S.D.N.Y. 1996) (holding that the state's Child Support Recovery Act was gender neutral and "[e]ven if [Judge Preska] found defendant's bare statistics and fact-finding to constitute a reliable reflection of gender-based adverse impact, which is relevant but not determinative, there is not one scintilla of evidence that the CSRA reflects invidious discrimination on the part of its framers") (internal citations omitted); *Thompson v. Ellenbecker*, 935 F. Supp. 1037, 1041 (D.S.D. 1995) (holding that a law did not violate the Equal Protection clause when it restricted obligors owing more than $1,000 in child support from renewing their licenses).

Even if I were to assume that Mr. Samuel's conclusory allegations that over ninety percent of non-custodial parents nationwide are men sufficed to assert a disparate impact, that would not be sufficient to state a viable Equal Protection Claim. As in *Nichols,* Plaintiff's allegations that the statute creates a disparate impact alone are insufficient to find that the

Maryland statute violates the Equal Protection Clause. *See Nichols*, 928 F. Supp. at 318. Specifically, Mr. Samuel does not allege that there was a discriminatory purpose behind the enactment of a statute that allows collecting child support from non-custodial parents. And it is hard to imagine how there could be one given that the very purpose of child support is to enable the parent with custody to have sufficient resources to raise the child or children when the non-custodial parent no longer is part of the household. Maryland has a significant interest in ensuring that parents, whether custodial or noncustodial, provide for their children, and therefore also has a significant interest in making sure that non-custodial parents are not delinquent in their payments. *Jones v. Helms*, 452 U.S. 412, 423 (1981) ("There can be no question about the legitimacy of the purpose to cause parents to support their children."); *Johnson v. Bredesen*, 624 F.3d 742, 747 (6th Cir. 2010) (finding that the compliance with court orders and payment of child support for re-enfranchisement were legitimate state interests to uphold a Tennessee law under the rational basis test); *Enrique v. Powell*, 302 F.3d 971, 974 (9th Cir. 2002) ("There can be no doubt that the failure of parents to support their children is recognized by our society as a serious offense against morals and welfare. It 'is in violation of important social duties [and is] subversive of good order.' It is the very kind of problem that the legislature can address.") (quoting *Braunfeld v. Brown,* 366 U.S. 599, 603 (1961)). When parents do not adequately provide for their children, the state must step in to do so. For that reason, at a minimum, the state has a rational basis for requiring non-custodial parents to pay their fair share of supporting their children.

Indeed, Congress has seen fit through statutes such as 42 U.S.C. § 666[13] to incentivize states to ensure that they have adequate laws to enforce child support obligations by providing federal funding if they establish programs such as those that suspend licenses and report those in arrears to the credit reporting bureaus for the purpose of monitoring enforcement of child support. Having failed to plead a plausible claim that there was a discriminatory purpose behind the creation of the laws authorizing the suspension of driver's licenses for non-payment of child support, and because there is a legitimate rational state interest in enforcing these laws, Mr. Samuel's equal protection claims against all Defendants fail and will be dismissed. *See Agg*, 855 F.2d at 341–42; *Thompson*, 935 F. Supp. at 1041; *see also Washington*, 426 U.S. at 242; *Jones*, 452 U.S. at 423; *Enrique*, 302 F.3d at 974.

*License Suspension and Violation of Due Process*

The only remaining issue in this case is whether Mr. Samuel's due process rights were violated when his driver's license was suspended in May 2017. Mr. Samuel alleges that he received a letter from the State dated May 8, 2017 stating that his license was to be suspended on May 30, 2017 for non-payment of child support. Compl. § III.A. Of note, Samuel filed suit in this court on May 17, 2017, when his license was not yet suspended, but his memorandum in Opposition to Defendants' Motion to Dismiss states that his license "has been suspended as of May 30, 2017." Pl.'s Mem. 4 n.2. As near as I can determine, Mr. Samuels appears to be

---

[13] Section 666 requires states to enact state laws following the procedures Congress outlined to assist in child support enforcement. Specifically, Congress mandated that states enact

> [p]rocedures under which the State has (and uses in appropriate cases) authority to withhold or suspend, or to restrict the use of driver's licenses, professional and occupational licenses, and recreational and sporting licenses of individuals owing overdue support or failing, after receiving appropriate notice, to comply with subpoenas or warrants relating to paternity or child support proceedings.

*Id.* § 666(a)(16).

asserting that he was denied procedural due process. Even accepting this assertion as a supplement to Plaintiff's Complaint, *see* Fed. R. Civ. P. 1, Plaintiff fails to state a claim for violation of his procedural due process rights.[14]

Mr. Samuel alleges (again, in entirely conclusory terms) that the Maryland Office of Child Support Enforcement had "no legal basis to request the suspension of plaintiff's driver [sic] license" and did so without affording him due process. Compl. § A.III. In order to allege a violation of procedural due process rights, the plaintiff must have a property right protected by the Due Process clause. It is clearly established that Mr. Samuel has a property right protected by the Due Process Clause in his driver's license. *See Bell v. Burson*, 402 U.S. 535, 539 (1971); *Kearney v. Maryland*, No. ELH-12-2754, 2013 WL 3964995, at *10 (D. Md. Aug. 1, 2013).

> "'[T]o determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate.' Rather than a meticulous examination of the minutiae of the state's procedural rubric, 'procedural due process is simply a guarantee' that there is notice and an opportunity to be heard."

---

[14] Mr. Samuel does not specify whether he seeks to assert a procedural or substantive due process claim.

> In addition to providing procedural due process protection, the Due Process Clause imposes certain substantive limitations on the power of state and local government to deprive individuals of life, liberty or property. In other words, substantive due process bars "'certain government actions regardless of the fairness of the procedures used to implement them.'" Substantive due process has been employed by the Supreme Court in two different manners. It has been the basis for implying some fundamental constitutional rights. It has also afforded protection against especially egregious, arbitrary governmental action.

Martin A. Schwartz, Fed. Judicial Ctr., *Section 1983 Litigation* 39–40 (Kris Markartan, 3d ed. 2014). As best as can be determined from reading Plaintiff's Complaint, he takes issue with the procedures used by the State of Maryland to assess and enforce child support obligations, child custody and related rights and obligations. Compl. § III.B. Accordingly, he does not appear to raise any substantive due process claims. But to the extent that he has, for the reasons explained by the Defendants (which the Court adopts), he has failed to plead a plausible claim for substantive due process violations. *See* Defs.' Mem. 11–12.

*Snider Int'l Corp. v. Town of Forest Heights, Md.*, 739 F.3d 140, 149 (4th Cir. 2014) (quoting *Zinermon v. Burch*, 494 U.S. 113, 125 (1990); *Mora v. City of Gaithersburg, Md.,* 519 F.3d 216, 230 (4th Cir. 2008)). Here, Mr. Samuel cannot argue that notice was insufficient. The letter he received on May 8, 2017 informed him that his license would "be suspended on the suspension date [May 30, 2017]." Compl. § III.A; Ltr., Pl.'s Ex. 1, ECF No. 12-1. Mr. Samuel was provided advance notice of approximately three weeks and admitted to having received the letter prior to the suspension. Compl. § III.A.

On a number of occasions, the Fourth Circuit has examined what is required to establish that an individual has had the opportunity to be heard in advance of adverse action by the state affecting a property interest. For example, in *Plumer v. Maryland*, the Fourth Circuit found that having been given notice of a hearing and afforded the opportunity to examine evidence, present rebuttal evidence, and call witnesses at the hearing, the appellant had received sufficient due process prior to revocation of her driver's license. 915 F.2d 927, 931–32 (4th Cir. 1990). Notably, the court added that the plaintiff clearly was not entitled to more than the state already provided and that the "Due Process Clause requires perhaps even less." *Id.* at 932. Almost twenty years later, the Fourth Circuit held that it is enough if a forum is available for the plaintiff to be heard and rebut the claims against him. *See Mora*, 519 F.3d at 230 (holding that it is not a violation of due process when the state provides an adequate remedy and the individual has not availed themselves of the process); *Snider Int'l Corp.*, 739 F.3d at 149–50; *see also Montgomery v. N.C. Dep't. of Motor Vehicles*, 455 F. Supp. 338, 341 (W.D.N.C. 1978) (holding that due process was not violated when the state would provide a hearing only at the request of the individual whose license was to be suspended).

Moreover, Samuels received more than just adequate notice; he was advised of his opportunity to contest the suspension of his license and raise any defenses.  The letter he received provided that "[t]o avoid suspension or to contest the accuracy of the Child Support case information" (for which the suspension was based), he should contact Prince George's County at the telephone number provided or that he could request a pre-deprivation hearing in the case of mistaken identity.[15]  Suspension Ltr.  On its face, the letter explained to Mr. Samuels that he could challenge the proposed suspension by requesting a hearing or contacting Prince George's County to contest the information for which the suspension was based.  This provided him with a sufficient opportunity to be heard, and procedural due process has been satisfied.  *See*

---

[15] A non-custodial parent may challenge the State's determination of a child support arrearage at a hearing or by requesting an investigation.  Title 7 of the Code of Maryland Regulations provides that a non-custodial parent may request in writing an investigation on the following claims:

1. The support obligation does not exist;
2. Amounts specified in the notice are incorrect and the noncustodial parent is less than 60 days out of compliance with the most recent support order;
3. Suspension of the noncustodial parent's license or privilege to drive would be an impediment to the obligor's current or potential employment because a driver's license is required by the employer to perform the duties of the job;
4. Suspension of the noncustodial parent's license or privilege to drive would place an undue hardship on the obligor because of the noncustodial parent's documented disability resulting in a verified inability to work; or
5. Suspension of the noncustodial parent's license or privilege to drive would place an undue hardship on the noncustodial parent because of the noncustodial parent's subsequent inability to comply with the court order due to:
   a. Unemployment;
   b. Insufficient income to meet the child support obligation; or
   c. Incarceration, not on work release and no other resources to meet the child support obligation.

Md. Code Regs.  7.7.15.05; *see also* Md. Code Ann., Fam. Law § 110-19.  Should the noncustodial parent request an investigation, he or she is entitled to present evidence rebutting the claim for suspending his or her license and following a decision, he or she may appeal.  Md. Code Regs. 7.7.15.05; *see also id.* 7.7.15.06 (appeals); 7.7.15.07 ("Reinstatement of Noncustodial Parent's Driver's License").

*Plumer*, 915 F.2d at 931; *Tomai–Minogue v. State Farm Mut. Auto. Ins. Co.,* 770 F.2d 1228, 1235 (4th Cir. 1985).

Thus, Mr. Samuel had an opportunity to contest the suspension of his driver's license prior to the suspension taking effect, which afforded him adequate due process. *See Mora*, 519 F.3d at 230 ("Procedural due process is simply a guarantee of fair procedures . . . typically notice and an opportunity to be heard. Mora has had, and continues to have, notice and an opportunity to be heard in Maryland, and he cannot plausibly claim that Maryland's procedures are unfair when he has not tried to avail himself of them.") (internal citations omitted); *Montgomery*, 455 F. Supp. at 341; *Snider Int'l Corp. v. Town of Forest Heights*, 906 F. Supp. 2d 413, 431 (D. Md. 2012) ("Plaintiffs each were provided notice and an opportunity to be heard. Plaintiffs who declined to avail themselves of their opportunity to appear have suffered no injury and therefore fail to state a claim upon which this court may grant relief."). Instead, Samuel chose to ignore this opportunity and filed this lawsuit. Having failed to avail himself of the due process rights that he had before the State, he cannot maintain a procedural due process claim in this Court. Therefore, Mr. Samuel's claims for a violation of his Due Process rights regarding the current suspension of his license will be dismissed.[16]

### Conclusion

In sum, Mr. Samuel is barred from bringing an action for monetary damages and prospective injunctive relief against the three State Official Defendants. Also, his claims to

---

[16] To the extent that Mr. Samuel's Complaint purports to raise challenges to his due process rights with regard to child custody, visitation rights, and the amount of his support obligations, his allegations are far too conclusory to state a plausible violation of federal law, and, for the reasons explained by the Defendants (which the Court adopts), the State of Maryland afforded him abundant due process rights with respect to each of these areas. *See* Defs.' Mem. 9–11.

reopen or challenge his divorce proceedings were brought outside the statute of limitations. Moreover, he has failed to state a claim for a violation of either the Due Process or Equal Protection Clauses of the Fourteenth Amendment. These deficiencies require dismissal of his claims against all the Defendants, including the County Official Defendant (Johnson).

A plaintiff's complaint should ordinarily be dismissed without prejudice unless he has previously been given an opportunity to amend his complaint or if doing so would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (noting that reasons to deny leave to amend include, *inter alia*, "repeated failure to cure deficiencies by amendments previously allowed" and "futility of amendment"). I have found that there is an absolute bar to his bringing a claim for monetary damages against three out of four Defendants, and that he is time barred from proceeding with his claims regarding his divorce proceeding and its award of custody to his former wife and child support award against him. As such, amendment for those claims would be futile. Additionally, amending his remaining claims for violations of the Due Process or Equal Protection Clauses of the Fourteenth Amendment would also be futile, as the State has provided adequate procedural protections and Plaintiff cannot plead a proper cause of action for an Equal Protection violation. Similarly, his claims against the County also must be dismissed as the County is first government entity in the procedural process that I have found to be adequate, *see* Suspension Ltr., and Plaintiff's Equal Protection claim against the County would be identical to one against the State. Therefore, these claims too will be dismissed with prejudice.[17] *See Foman*, 371 U.S. at 182.

---

[17] Because the grounds discussed in this Memorandum are sufficient to justify dismissal with prejudice of Mr. Samuel's Complaint, I need not address the other grounds raised by Defendants.

## **ORDER**

Accordingly, it is, this <u>9th</u> day of <u>March</u>, <u>2018</u> hereby ORDERED that:

1. The Motion to Dismiss, ECF No. 10, IS GRANTED;

2. Plaintiff's Motion to file a Surreply, ECF No. 15, IS DENIED;

3. The Complaint IS DISMISSED WITH PREJUDICE; and

4. The Clerk is DIRECTED to CLOSE THIS CASE and MAIL a copy of the

   Memorandum Opinion and Order to Plaintiff.


_____/S/_____
Paul W. Grimm
United States District Judge

jml